Next case this morning is Kedas v. Illinois Department of Transportation, Appeal No. 22-2775. Mr. Baker, whenever you're ready. Good morning, may it please the court, counsel. My name is John Baker and I represent Alex Kedas. And we are here asking the court to reverse a partial grant of summary judgment in this case. I know the court is likely familiar with the proceedings down below, but I'll just briefly explain. This was a retaliation claim under Title VII that Mr. Kedas brought. At summary judgment, the district court eliminated some of the claims, allowed some to go to trial. There was a trial, and we are here not necessarily touching anything upon the trial, but on the claims that were kicked out. And so that's where we are procedurally. What happened in this case was in April of 2016, Mr. Kedas filed a complaint with the department's ethics officer, alleging that he believed there was gender discrimination. We're not clear, there's nothing in the record to suggest any investigation was done, but what we know is a few weeks later, Mr. Kedas was called into a meeting with his supervisors, and at that time, he was disciplined. That was in 2016, right? That was in 2016, yes. Mr. Baker, what I'm having trouble with is, in 2016 these events happened, and you're alleging that in 2018 there are negative job consequences because of the 2016 events, but there are massive supervening events that occurred in 2017 and 2018. So how do you establish causation here, even if the 2018 events qualify as materially adverse employment actions? How do you establish causation from 2016 to 2018 with all these intervening events? Well, and Judge Kirsch, I think that's kind of the crux of the case, and that's what Judge Bruce had an issue with. But I think that the problem is Judge Bruce looked at this as the 2018 incidents were happening in a vacuum, all right? And so what we have to look at is go back to 2016, and that's when the relationship between Kedas and his supervisors fell apart. And so what we are contending is the other events that occurred along that trail, the 2017 events, the 2018 events, that those were also retaliatory. Now, we're not challenging whether they were material, so they wouldn't in and of themselves support a specific claim. Isn't your theory, if we accepted that theory, wouldn't every retaliation claim go to a jury? You should always, you point to one thing, and then years later, after numerous intervening events, you can say, well, we started with one materially adverse action. And then we can allege or we can argue to a jury that everything along the way, no matter how good or bad for my client, was building on that one adverse action to lead to a materially adverse action or a protected activity to lead to a materially adverse action years later. There'd be no limit. Like, how do we draw the line, I guess? Well, I think that it has to be done on a case-by-case basis. But I think that what you have to look at is, is there an ongoing progression, a pattern? And I think that's what we are saying here. And so the things that happened in 2017, we believe that there's evidence that those were undertaken for retaliatory reasons as well, and so that the hostility towards my client never really stopped. Were there any materially adverse actions in 2017? The actions that occurred in 2017, there was the evaluation that was, again, downgraded with the comment, you spend too much time making complaints about job assignments. And that is materially adverse in my view because it impacted his ability to get this bonus. Every year there was a bonus if you met a certain date. It just doesn't, under our case law, that doesn't come close to, I don't think, a materially adverse action, a negative job performance or a negative job review. Well, a negative job review standing by itself does not come close. But when you factor in the fact that there is a financial component to it, then it does. And this was a bonus that was clearly tied to what the performance score was. So the poor evaluation impacted financially my client. And so we had that. We had the two disciplinary actions that occurred in 2017. In both of those actions, they claim that Mr. Kiedis was insubordinate, that he did something that he had been specifically told not to do. The problem is we have a factual dispute as to those issues. Mr. Kiedis has testified that that's not at all what happened and that those actions were simply manufactured. Now, those might not in and of themselves support a claim of retaliation, but they certainly can be evidence that if a jury is going to look at the full scope, the full picture of everything that occurred here, a jury could conclude that based on this ongoing pattern, there was retaliation. And we get to the final event and that that was retaliatory as well. And we look at all of these different facts and we get to the 2018 incidents. Mr. Kiedis has a job description that very clearly says what his threshold of projects are going to be. He's given something far beneath that threshold. Again, he complains about that, files a retaliation complaint. But again, going back to Judge Kirsch's question, even if we find that the February 2018 assignment was retaliatory, what do we attach it to? What was the retaliatory motive that we attach it to? It was to the 2016. Because clearly, just the arrow of time, it couldn't be the April 2018 complaint because that occurred after the fact. It is tied into the 2016 complaint. But if we try to do that, how do we get over the 2017 job assignment where he did get the complex to the most expensive project? Well, Judge, I think that's a great question and I think that's a great argument for a jury. All right. And so we can look at this. How do you get there, though? Well, we get there by saying there were these adverse actions that were taken all along the way. And if they defended by saying, well, these 2017 projects were given to him, that's something that could be presented to a jury. The question isn't do we have to absolutely eliminate any potential argument. The question is, is there sufficient evidence here from which a jury could look at all of these factors, all of these different points along this time continuum and say, yeah, we believe that this was retaliatory. Now, must they find that? Or could they find that? And so I think your point is a valid one, but I think that's a factual issue for a jury to determine and not an issue for this court or the district court to determine. I think that, you know, you get into the 2018 issues and it's just the ongoing pattern. Mr. Kiedis is given this dollar value that is much lower than what it was supposed to be for his projects. He goes and he does complain, but immediately after that, they change his job description. They change his job description. You know, his bosses go and change his job description to reduce it. They've never explained why they did that. They can't explain it. Wasn't that department-wide? Well, it was a request by his supervisors that the job description be changed, and then it was enacted at the department level, Judge Hamilton. But the actual request was made by that same group of supervisors. You know, then we have the other comments that came across during discovery, the cancer comment. You know, Alex is a cancer. And, again, this is a man who was very, very highly regarded as an engineer. Nobody ever questioned his job performance, his dedication. And so this comment, and that's never been explained what really that meant, but referring to him as a cancer by saying that Alex spends too much time on extracurricular activities. And, again, that's a comment that could mean a number of different things, but they never explain what it means. And when I asked what do you mean by extracurricular activities, they couldn't make a response to that. Mr. Baker, as I understand it, the big money in this case would be on your constructive discharge case. Is that right? I think so. So what's your best case to argue that these circumstances amounted to an absolutely intolerable work atmosphere? I recognize the case law in the circuit, and I think that it's hard to get there. But I think that when you get the treatment, the overall treatment over a period of years, and granted, Judge Hamilton, there was nothing that happened two days before he left. He was not threatened with termination. But I think the continual change of the job description, the taking away of responsibilities, just those day-to-day things. I understand your factual arguments. I was asking for case law. Well, I mean, the case law suggests that there needs to be a lot more than that. Thank you. I don't know that a lot more, but more. I do see that my time has expired. I want to thank the court, ask the court to reverse. Thank you. Thank you, Mr. Baker. Okay, Ms. Jonig. Good morning, and may it please the court. Assistant Attorney General Lee Jonig for the Appellee Department of Transportation. The district court correctly limited the issues for trial because, first, there's no evidence that Mr. Kiedis' 2018 job assignments were retaliatory, and, second, there's no evidence of constructive discharge. With respect to the 2018 job assignments. Could I ask you, I meant to ask Mr. Baker this, but I'm looking at the supposedly final judgment in this case, and I don't see how this is quite a final judgment. It's like none I've seen before. It just says, here's what the jury's verdict was. It doesn't order one side to pay the other side anything. It doesn't say that the defendant owes nothing. It just recites the verdict. I think that's right. I mean, I don't have a judgment in front of me. There's often a big gap between a verdict and a judgment. Yeah, well, so I think that my recollection of the specific jury form that's sort of put onto the judgment is it makes clear that the defendant doesn't owe Mr. Kiedis anything. It says that's what the jury decided. I recognize that it may appear to be unusual. I mean, I think it's clear from the, you know, this court has. Everybody seems satisfied that the district judge thought he was done. Yes, and this court's case law makes clear that when the district court is clear that it is finished with the case, there's a final judgment, and so I think that certainly would apply here. So with respect to the 2018 job assignments, they weren't retaliatory for two reasons. First, they were not materially adverse in that they would not have dissuaded a reasonable employee from making a charge of discrimination. Mr. Kiedis was assigned projects that were slightly below the dollar amounts in his job description, but he himself testified that those dollar amounts were not a hard and fast limit and that they were an approximation. So the fact that, you know, his, the projects that he oversaw in 2018 were slightly below $2 million doesn't reflect a material change in his job duties, and in fact those projects were consistent with his overall duties of often overseeing complex projects. And even if the 2018 job assignments were materially adverse, there's no evidence that they were caused by the protected activity, which in this case occurred nearly two years earlier. And in the intervening time, as Your Honor pointed out, there's, there were these in 2017 in the construction season that began right, you know, the first one right after the protected activity, he was assigned the projects of the highest dollar amount. And so that in itself sort of, you know, there's no reasonable jury could not infer that Mr. Kiedis or that the department gave him, you know, projects exactly what he wanted in 2017 only to retaliate against him a year later. With respect to this, you know, this argument that Mr. Kiedis makes of trying to reframe the entire record as this one big pattern of retaliation. There's really just no evidence that supports that any, you know, clashes that Mr. Kiedis had with his supervisors and his coworkers and they just continued throughout. So the fact that they did continue after 2016 doesn't suggest any, any inference of causation. And then with respect to, you know, Mr. Kiedis is kind of disputing at a very high level of generality, these incidents that were documented in his performance evaluations and in his reprimands, he doesn't offer any to any actual testimony that suggests that the department's, you know, actions, you know, comments in his evaluations or, you know, actions in reprimanding him were contextual or were in any way untrue. He doesn't offer any testimony. He just kind of has these high level statements and declaration. Well, no, my emails were fine. And that's not enough to negate summary judgment here. So unless the court has any further questions on the 2018 assignments with respect briefly to constructive discharge, again, those same incidents that Mr. Kiedis kind of relies on for this argument, don't make a working environment environment so intolerable that a reasonable employee would be reflected to quit at best. We have these, you know, a couple of isolated incidents of comments by his supervisors. This court's case law also indicates that that's not enough to make a working environment intolerable that would support constructive discharge. So unless the court has any further questions on that issue, for those reasons and the reasons stated in our brief, we had asked this court to affirm the district court's summary judgment order and judgment. Okay. Thank you. Counsel. The case will be taken under advisement. Our next case.